IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

KEVIN WHALEY                            §
                                        §
V.                                      §          CIVIL ACTION NO. 2:06-CV-170
                                        §
TOM MCCOOL, ET AL.                      §

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion for Summary Judgment (Doc. No. 83), Plaintiff's

Response (Doc. No. 90), Plaintiff's Amended Response (Doc. No. 93), and Defendants' Reply (Doc.

No. 95).  For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED

IN PART as to Plaintiff's claims for right to peaceably assemble under the First Amendment of the

United States Constitution, failure to properly train, supervise, and hire claims, and intentional

infliction of emotional distress, but Defendants' Motion for Summary Judgment is DENIED IN

PART as to Plaintiff's claims for excessive force under Section 1983, false arrest, assault, and

battery, and Defendants' Motion for Summary Judgment is further GRANTED IN PART as to

Defendants' affirmative defense of qualified immunity for the peaceably assemble claim, but

DENIED IN PART as to Defendants' affirmative defenses of qualified immunity for the excessive

force claim, and official immunity.

## I.  PROCEDURAL BACKGROUND

Plaintiff Kevin Whaley filed his Complaint against Harrison County Sheriff Tom McCool

and Deputy John Doe on April 24, 2006.  (Doc. No. 1.)  McCool filed an Answer on May 22, 2006.

(Doc. No. 6.)  A First Amended Complaint was filed on June 27, 2006, which added Plaintiffs

Marilyn Robinson and Tarus Robinson, as well as Defendant James Wilken, Chief of the Marshall

Police Department.  (Doc. No. 37.)  Defendant Wilken filed an Answer on October 17, 2006.  (Doc.

No. 34.)  Pursuant to the Court's Order of March 20, 2007 (Doc. No. 46), and April 23, 2007 (Doc. No. 58), granting Plaintiffs leave to file a Rule 7 Reply and Amended Complaint,  Plaintiffs filed a [Second] Amended Complaint on May 2, 2007, adding as defendants, Marshall Police Officer Joe Oldham, Marshall Police Officer C.J. Boyd, Lt. Brad Thomas of the Harrison County Sheriff's Department, Deputy Matthew Hasler of the Harrison County Sheriff's Department, and Deputy Brandon Fletcher of the Harrison County Sheriff's Department.  (Doc. No. 59.)  Defendants from the Harrison County Sheriff's Department filed an Answer to Plainitffs' Second Amended Complaint on May 22, 2007.  (Doc. No. 65.)  Defendants James Wilkens and C.J. Boyd of the Marshall Police Department filed an analogous Answer on June 29, 2007.  (Doc. No. 68.)

Based upon a Joint Motion to Dismiss the defendants from the Marshall Police Department (Doc. No. 80), the Court dismissed Defendants Joe Oldham, C.J. Boyd, and James Wilken, in their individual and official capacities, on August 7, 2007.  (Doc. No. 81.)  Similarly, based upon a Stipulation of Dismissal of all claims by Plaintiffs Marilyn Robinson and Tarus Robinson (Doc. No. 84), the Court dismissed Plaintiffs Marilyn Robinson and Tarus Robinson on August 20, 2007.  (Doc. No. 85.)

The remaining defendants from the Harrison County Sheriff's Department, Tom McCool, Matthew Hasler, Brandon Fletcher, and Brad Thomas, filed a Motion for Summary Judgment against the remaining plaintiff, Kevin Whaley, on August 10, 2007.  (Doc. No. 83.)  Defendants filed the Motion for Summary Judgment in a timely manner, as it complied with the Court's most recent Amended Docket Control Order ("DCO"), requiring Dispositive Motions to be filed by August 10, 2007.  (Doc. No. 64.)  The DCO requires that Responses to Dispositive Motions be filed by August 31, 2007.  Plaintiff did not file his Response until September 11, 2007, and an Amended Response

2

until September 14, 2007.  However, in the interests of justice and due consideration of the merits of this case, the Court will consider Defendants' Motion for Summary Judgment along with Plaintiff's Response and Amended Response.

## II.  FACTUAL BACKGROUND

On March 26, 2006, a shooting occurred at Spring Street Park in Marshall, Texas.  Several were injured, and one was killed.  After the shooting, victims were taken to the Marshall Regional Hospital emergency room several blocks away.  People associated with the victims began to assemble at the hospital.  Marshall police officers were present at the scene, but as the number of people grew, the Harrison County Sheriff Department, as well as the Texas Department of Public Safety were called in to assist with crowd management.  Hasler Aff. at 1-2.

At this point, Plaintiff and Defendants present contradictory versions of events.  The Defendants' version is as follows:

The large crowd at the hospital restricted the entrance to the emergency room, and law enforcement officers attempted to move the crowd across the street, away from the entrance.  Hasler Aff. at 2.  During this time, the crowd grew belligerent toward the officers.  Thomas Aff. at 3.

At some point, Deputy Matthew Hasler instructed Plaintiff Kevin Whaley to move along.  Whaley replied to Hasler, "I don't have to go a fucking place, this is my family up here."  Hasler asked Whaley to move along again and Whaley replied, "Fuck you."  Hasler then informed Whaley that he was under arrest for disorderly conduct.  Whaley turned and ran into the crowd.  Hasler grabbed Whaley with the help of Deputy Brandon Fletcher, handcuffed Whaley, and began to escort him to his patrol car.  En route to the patrol car, a fight broke out in the crowd, prompting Whaley to turn and run toward the fight.  Hasler Aff. at 2-3; Fletcher Aff. at 1-2.

3

Deputy Hasler reached for Whaley, and was only able to grab his shirt.  Whaley attempted to run away again, but slipped and fell to the ground.  Whaley told Hasler his ankle was injured, so Hasler removed Whaley's handcuffs to allow him to sit in a wheelchair, and waited for medical personnel to attend to Whaley's ankle.  At some point while Hasler was not looking, Whaley ran away and escaped custody.  Hasler Aff. at 2-3.

During this time, Deputy Brad Thomas was also present at the scene, and observed some of the above events.  However, Deputy Thomas did not assist Deputies Hasler and Fletcher in any way, nor did he have any physical contact with Plaintiff Whaley.  Thomas Aff. at 2.  It is undisputed that Sheriff Tom McCool was not present at the scene, and did not have any contact with Plaintiff.

On the other hand, Plaintiff contends that the following facts govern the case.  The crowd of individuals were peacefully assembling in the parking lot and sidewalks outside of the Marshall Regional Medical Center.  Jackson Aff. ¶ 5.  At some point, law enforcement officers arrived at the scene and began to harass members of the crowd.  Jackson Aff. ¶ 6.  Two officers approached Plaintiff Kevin Whaley, pushed him, and wrested him to the ground.  Jackson Aff. ¶ 7; Marilyn Robinson Aff. ¶ 8.  Whaley then grabbed his ankle as if in pain.  Marilyn Robinson Aff. ¶ 8.  Plaintiff's witnesses did not see Whaley provoke the officers or resist them in any way.  Marilyn Robinson Aff. ¶ 8.  Instead, they saw him attempting to comply with the officers' request to vacate the scene.  Jackson Aff. ¶ 9.

### III.  APPLICABLE LAW

A.    Summary Judgment Standard

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

The party moving for summary judgment, the movant, "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323-25).  A fact is material if it might affect the outcome of the suit under the governing law.  *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).  Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961.  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or

a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 249-51; *Texas Instruments*, 100 F.3d at 1179.

B.      Civil Rights Claims - 42 U.S.C. § 1983

Section 1983 provides redress for those who have been injured or deprived of their rights under color of state law.[1]  In order to state a valid claim under section 1983, plaintiffs must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

---

[1] The statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

6

C.      Qualified Immunity Defense

In a Section 1983 civil rights action, qualified immunity attaches only to officials in their individual, not their official capacities. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 337 (5th Cir. 2003). Under the doctrine, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Evett v. DETNTFF*, 330 F.3d 681, 687 (5th Cir. 2003). The Supreme Court has characterized the doctrine as protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005).

When analyzing qualified immunity issues, a court must first determine whether the plaintiff has specifically alleged a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court must view the facts in a light most favorable to the party asserting the injury. *Saucier*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)). If no constitutional right would have been violated were the plaintiff's allegations established, then the inquiry ends, and the court need not proceed further. *Id.*

If a violation has occurred however, the court must determine whether the right violated was "clearly established." *Id.* The matter must be undertaken in the "specific context of the case, not as a broad general proposition." *Id.* A right is clearly established if its "contours . . . [are]

7

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In other words, the appropriate inquiry into whether a right is clearly established is whether it would be apparent to a reasonable officer that his conduct was unlawful in the situation he confronted, and that right must be clearly established at the time of the alleged violation. *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)).  If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Id.*

If the plaintiff does prove the violation of a clearly established constitutional right, the court will then determine if the official's conduct was objectively reasonable under the circumstances such that a reasonably competent officer would not have known his actions violated then-existing clearly established law. *Id.*; *Siegert*, 500 U.S. at 231-32; *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001).  Typically, objective reasonableness is a matter of law for the courts to decide.  *See Siegert*, 500 U.S. at 232; *Williams v. Bramer*, 180 F.3d 699, 702 (5th Cir. 1999).

In *Saucier*, the United States Supreme Court instructed that the inquiries for constitutional violations and qualified immunity remain distinct.  *See Saucier*, 533 U.S. at 204.  The Court opined that "it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances." *Id.*  at 205.  In that case, the Supreme Court stated that qualified immunity operates as a shield to protect officers if, in fact, a constitutional violation has been committed, but the officer's mistaken belief was reasonable in light of established law.  *Id.* at 205-06.  The defendant's acts are held to be objectively reasonable unless all reasonable officials in the

8

defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's constitutional right. *Anderson,* 483 U.S. at 641; *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002) (citing *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001)). In other words, qualified immunity attaches unless no reasonable official would have acted in a manner similar to the defendant. *Id*.

## IV.  DISCUSSION

Plaintiff Kevin Whaley alleges in his various Complaints the following claims: (1) All Defendants are liable to Plaintiff for violating Plaintiff's constitutional freedom to peaceably assemble, (2) All Defendants are liable to Plaintiff for violating rights guaranteed by the 14th Amendment to the United States Constitution by using excessive force where applicable, (3) Defendants are liable to Plaintiff for serious bodily injuries caused by their wrongful act, (4) Defendants James Wilken[2] and Tom McCool deprived Plaintiff of the rights secured to them by the Fourteenth Amendment to the United States Constitution by failing to exercise proper caution in the hiring, training and supervision of their officers and deputies in the proper procedures for search and arrest and the proper use of force, (5) Defendants are liable to Plaintiff for violating provisions of the Texas State Constitution that protect citizens from use of excessive force by governmental actors, (6) Defendants are liable to Plaintiff for violating provisions of the Texas State Constitution that protect citizens' right to peacefully assemble, and (7) state tort law claims against all Defendants of false arrest, assault, battery, and intentional infliction of emotional distress.[3] (*See* Doc. Nos. 1, 37,

---

[2] Defendant James Wilken has been dismissed from the case.  (Doc. No. 81.)

[3] Plaintiffs' First and Second Amended Complaint included a state tort law claim of negligent infliction of emotional distress by Plaintiffs Marilyn and Tarus Robinson.  However, all claims by these two Plaintiffs were dismissed on August 20, 2007.  (Doc. No. 85.)

59.)  Plaintiff prays for compensatory damages, punitive damages, and reasonable attorney's fees.
*Id.*

Defendants have moved for summary judgment on the following grounds: (1) Plaintiff was not deprived of his constitutional freedom to peaceably assemble, (2) Defendants did not use excessive force, (3) Defendant Sheriff Tom McCool has not failed to properly train, supervise, or hire his employees, (4) Defendants are entitled to qualified immunity, (5) Plaintiff's state tort law claims are without merit, and (6) Defendants are entitled to "official immunity" under state law.[4] On these bases, Defendants ask that Plaintiff's claim for punitive damages be dismissed with prejudice.  (Doc. Nos. 83, 95.)

A.      First Amendment Right to Peaceably Assemble

The First Amendment carries with it "the right of the people peaceably to assemble."  U.S. Const. amend. I.  Traditionally, the right to peaceably assemble has been limited to "public forums," such as public streets and parks, which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."  *Hague v. CIO*, 307 U.S. 496, 515 (1939).

In subsequent cases, the Court has wrestled with the conflict between the First Amendment and the government's proprietary interests in public property other than streets and parks.  In *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), it divided state-owned territory and structures into three categories:

[1]  In places which by long tradition or by government fiat have been devoted to

---

[4] Defendants have not moved for summary judgment on either of Plaintiff's claims under the Texas State Constitution, for excessive force, and the right to peaceably assemble.  The Court will thus reserve judgment on these two claims and will not rule as to whether they will proceed to trial until a later date.

assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed.  At one end of the spectrum are streets and parks which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."  In these quintessential public forums, the government may not prohibit all communicative activity.  For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.  The State may also enforce regulations of the time, place and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

[2] A second category consists of public property which the State has opened for use by the public as a place for expressive activity.  The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place.  Although a State is not required to indefinitely retain the open character of the facility, as long as it does so it is bound by the same standards as apply in a traditional public forum.  Reasonable time, place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest.

[3]  Public property which is not by tradition or designation a forum for public communication is governed by different standards. We have recognized that the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government."  In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. . . . As we have stated on several occasions, [t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.

*Perry*, 460 U.S. at 45-46 (internal citations and footnotes omitted).

Defendants move for summary judgment on Plaintiff's right to peaceably assemble claim based upon several theories.  First, Defendants point out the First Amendment only guarantees the right to a peaceful assembly and not to a violent riot.  Mot. at 13.  Defendants allege that the crowd outside of Marshal Regional Medical Center was hostile and potentially violent.  Hasler Aff. at 3. Plaintiff, on the other hand, has presented evidence stating that "the crowd was docile, and I saw no signs of hostility or any altercations taking place."  Jackson Aff. ¶ 5.  In addition, the affidavit states,

"I did not see [Plaintiff] Kevin Whaley provoke the officers or resist them in any way.  Further I observed Kevin Whaley attempting to comply with the officers' request to vacate the scene." Jackson Aff. ¶ 9.  There is thus a factual dispute as to whether Plaintiff's actions were peaceful at the time of the assembly.

Second, Defendants argue Plaintiff's attempt to assemble with the crowd was not restricted because nobody forced him to leave; instead, he left the premises of his own accord.  Mot. at 14; Hasler Aff. at 3.  However, Plaintiff claims he was pushed and wrested to the ground without an apparent reason.  Jackson Aff. ¶¶ 7, 9; Marilyn Robinson Aff. ¶¶ 8, 9.  He may have left of his own accord after he was injured, but the act prompting him to stop his assembly with the crowd was that of a law enforcement officer.  According to Plaintiff, he was restricted from assembly by a state actor.

Third, Defendants state that the incident occurred on private property upon which Plaintiff has no constitutional right to peaceably assemble.  Mot. at 12-13 (citing *Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972)).  However, as Plaintiff points out in his Response, Defendants have not submitted any evidence pertaining to the nature of the Marshall Regional Medical Center.  As Defendants carry the initial burden to show that no genuine issue of material fact exists, this Court cannot assume that Plaintiff's attempt to congregate at the hospital took place on private property.

Fourth, Defendants claim that Plaintiff has failed to prove how his right to assemble was restricted by each of the Defendants.  It is undisputed that Sheriff Tom McCool was not present at the Marshall Regional Medical Center, and did not personally restrict Plaintiff's right to peaceably assemble.  It is also uncontested that Deputy Brad Thomas was present at the scene, but was not involved with the arrest of Plaintiff, and had no contact with Plaintiff.  *See* Marilyn Robinson Aff.

12

¶ 7 (Only two officers approached Kevin Whaley, presumably Matthew Hasler, and Brandon Fletcher).  The two law enforcement officers who approached Plaintiff were Deputies Hasler and Fletcher.  Deputy Hasler was the primary officer involved, while Deputy Fletcher assisted Hasler with Plaintiff's arrest.  Hasler Aff. at 2; Fletcher Aff. at 1-2.  With these facts, there were only two defendants who may have restricted any constitutional right to peaceably assemble that Plaintiff may have had on March 26, 2006.  Because the other two defendants had no direct contact with Plaintiff, Defendants' Motion for Summary Judgment is granted as to Defendants Tom McCool and Brad Thomas on Plaintiff's peaceably assemble claim.

More importantly, Defendants assert Plaintiff was asked to leave the hospital premises because "[t]he hospital, fearing that the large crowd would impede their ability to do business, had the police chief instruct the crowd to disperse."  Resp. at 13.  To support this proposition, the Sheriff Deputies involved with the incident have stated "[t]he large crowd was blocking emergency entrances and exits . . . I was thus instructed by Marshall P.D. to move the crowd away from emergency entrances so that the medical personnel could do their jobs."  Hasler Aff. at 3.  Plaintiff, interestingly enough, does not directly dispute the impact that the large crowd may have had on hospital operations.  One of Plaintiff's witnesses states that "myself and others had gathered at the emergency room to check on the well being of family members and friends.  That we were not allowed to enter the hospital and waited in the parking lot and on the public sidewalks to receive information."  Marilyn Robinson Aff. ¶ 4-5.  Given these facts, it is likely that a large crowd outside of a hospital's emergency room, even if waiting in the parking lot, and on the sidewalks, could prevent smooth functioning of a hospital.

Even if the Court were to assume that the hospital was owned by a governmental entity, the

13

right to demonstrate on public property is by no means absolute.  "The Supreme Court has suggested that while performing public functions public hospitals are akin to jails and may impose reasonable time, place, and manner restrictions on First Amendment activities."  *Dallas Ass'n of Community Organizations for Reform Now v. Dallas County Hospital Dist.*, 656 F.2d 1175, 1180 (5th Cir. 1981) (citing *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 512 n.6 (1969)). The *Dallas* court acknowledged that "other courts also have concluded that even peaceful speech and assembly interfering in any way with the functioning of a hospital may be excluded," and held in a similar fashion.  *See id.* (citing *United States v. Douglass*, 579 F.2d 545, 549 (9th Cir. 1978); *Chicago Area Military Project v. City of Chicago*, 508 F.2d 921, 925 (7th Cir. 1975); *International Society for Krishna Consciousness v. Schrader*, 461 F.Supp. 714, 718 (N.D. Tex. 1978)).  The court considered the factual circumstances of the case, and reasoned there was a substantial likelihood that the speech in question would interfere with the operations of the hospital.  *Id.* ("[W]e emphasize our decision is based on the necessity to ensure that the extreme congested conditions at Parkland [Hospital] are not further aggravated.  We merely wish to enable those who need health care at Parkland to receive it without interference and without the grave possibilities of adverse medical reactions from such disturbing conditions.").

Here, it is undisputed that the crowd of people was congregating outside of a hospital emergency room.  It was a large crowd; Plaintiff has not objected to Defendants' assertion that there may have been two hundred (200) people.  Whaley Dep. 61:12-16.  Even if the crowd was docile and peaceful as Plaintiff alleges, its size would create a substantial likelihood of interference with hospital operations.  Deputies Hasler and Thomas both stated in their affidavits that the large crowd blocked emergency entrances and exits.  Hasler Aff. at 3; Thomas Aff. at 3.  Plaintiff has not

14

objected to these assertions.  The extent of Plaintiff's argument on this issue is that "there is no evidence that the administrators or those in charge of said hospital wanted the crowd disbursed." Resp. at 4.  Despite there being no direct evidence from hospital representatives, Deputy Hasler states in his affidavit that "Marshall Police Officers advised we needed to try and get the subjects away from the entrance and across the road so emergency personnel could get in and out of the emergency room."  Hasler Aff. at 2.  Deputy Thomas states in his affidavit that "[o]ur goal was to disperse the crowd across the street so that emergency personnel could do their job."  Thomas Aff. at 3.

Moreover, it remains undisputed that hundreds of people were gathered outside of a hospital emergency room.  Even if the Court were to accept Plaintiff's assertion that the crowd peacefully assembled in the parking lot and on the sidewalks, a large crowd in these areas would likely interfere with emergency personnel and ambulance-related services.  Given these circumstances, the Fifth Circuit has upheld reasonable time, place, and manner restrictions on speech interfering with hospital operations.  Denying Plaintiff the right to assemble in the immediate surrounding areas of a hospital emergency room after a shooting had occurred is a reasonable time,  place, and manner restriction. Plaintiff therefore did not possess a right to peaceably assemble given the factual circumstances of this case.  Defendants' Motion for Summary Judgment is granted on Plaintiff's peaceably assemble claim as to all Defendants.

As a final matter, Defendants, as state officials, have asserted the affirmative defense of qualified immunity.  Even if the Court were to find a constitutional violation based upon Plaintiff's peaceably assemble claim, Plaintiff would still be required to show that no reasonable law enforcement officer would have disbursed the crowd given the above circumstances.  *Anderson v.*

*Creighton*, 483 U.S. 635, 641 (1987).  Plaintiff has not argued or demonstrated that no reasonable officer would have disbursed the crowd.  Plaintiff does argue that "any attempt to restrict the freedom of assembly must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and present danger. . . . Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation."  Resp. at 3 (citing *Thomas v. Collins*, 323 U.S. 516, 530 (1945)).  A large crowd assembled in the area outside of an emergency room, however, arguably gives rise to a clear and present danger that a hospital will not function properly.  A reasonable officer should thus possess the discretion necessary to clear a hospital entrance if a crowd could potentially threaten hospital operations.  It is this type of situation wherein qualified immunity attaches to provide officers with the flexibility needed to exercise their discretion.  *See Sanchez v. Swyden*, 139 F.3d 464, 467-68 (5th Cir. 1998) ("For example, the Supreme Court has expressed concern that expansive civil liability for actions taken while on duty may cause police officers to hesitate before acting - a situation that could produce unwelcome results.") (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Therefore Defendants' Motion for Summary Judgment based on a qualified immunity defense as applied to the peaceably assemble claim is granted as to all Defendants.

B.     Section 1983 Excessive Force Claim

Though Plaintiff may not have had a right to assemble in front of the hospital entrance, Defendants may still have acted with excessive force in their attempt to remove Plaintiff from the premises.  To state a claim for imposition of excessive force, the Fifth Circuit has declared that a plaintiff must show that "he (1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable."

16

*Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998) (citing *Ikerd v. Blair*, 101 F.3d

430, 433-34 (5th Cir. 1996)).

Defendants argue that the deputies involved in the arrest of Plaintiff on March 26, 2006 did

not use excessive force, and that any force used was objectively reasonable.  Mot. at 16.  The

statements in the affidavits of Deputies Hasler and Fletcher state that they arrested Plaintiff only after

Plaintiff committed the offense of disorderly conduct.  Hasler Aff. at 2; Fletcher Aff. at 1-2.  Plaintiff

injured his ankle only because he slipped and fell when Deputy Hasler tried to prevent Plaintiff from

fleeing custody.  Hasler Aff. at 2-3.

During this time, Deputy Brad Thomas was also present at the scene, and observed some of

the above events.  However, Deputy Thomas did not assist Deputies Hasler and Fletcher in any way,

nor did he have any physical contact with Plaintiff Whaley.  Thomas Aff. at 2.  It is undisputed that

Sheriff Tom McCool was not present at the scene, and did not have any contact with Plaintiff.

Plaintiff, on the other hand, has submitted affidavit statements supporting a claim for

excessive use of force as to some of the defendants.  The affidavit statements paint a picture that no

force was necessary under the circumstances, and thus Defendants' use of force was objectively

unreasonable and excessive.  According to the Affidavit of Stephanie Jackson, "the crowd was

docile, and I saw no signs of hostility or any altercations taking place.  At some point law

enforcement officials began to harass members of the crowd.  That she saw an officer push Kevin

Whaley whom she is familiar with. . . . I did not see Kevin Whaley provoke the officers or resist

them in any way.  Further I observed Kevin Whaley attempting to comply with the officers' request

to vacate the scene." Jackson Aff. ¶¶ 5-9.

According to the Affidavit of Zachary Robinson, "[w]e were not allowed to enter the hospital

17

and waited in the parking lot and sidewalks to receive information.  At some point law enforcement officials began to harass members of the crowd.  *Two officers* approached Kevin Whaley.  I saw Kevin Whaley wrested to the ground and subsequently grab his ankles as if in pain.  I did not see Kevin Whaley provoke the officers or resist them in any way."  Zachary Robinson Aff. ¶¶ 5-9 (emphasis added).  The Affidavit of Tarus Robinson provides sworn statements corroborating those of Zachary Robinson.

Plaintiff has submitted sufficient evidence to rebut Defendants' showing that no genuine issue of material fact exists.  Plaintiff has shown that two officers approached Kevin Whaley and pushed or wrested him to the ground without an observable reason.  A reasonable jury could find that such use of force is clearly excessive and objectively unreasonable.  However, Plaintiff has only shown that two officers approached Kevin Whaley and applied force to his body.  Plaintiff does not dispute Defendants' showing that Deputy Brad Thomas and Sheriff Tom McCool never had any direct contact with Plaintiff.  Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's excessive force claim is thus granted as to Defendants Brad Thomas and Tom McCool, but denied as to Defendants Matthew Hasler and Brandon Fletcher, the two officers who presumably approached and arrested Plaintiff.

Defendants have also asserted the affirmative defense of qualified immunity with respect to Plaintiff's excessive force claim.  In the context of a claim for imposition of excessive force, the Fifth Circuit has recognized that the inquiry as to whether the force exerted was objectively reasonable, coincides in large part, with the inquiry as to whether the officers' conduct was objectively reasonable for qualified immunity purposes.  *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998).

Applying this body of law to the set of facts before this Court, we must again recognize the factual dispute between the parties.  Although issues of qualified immunity are typically questions of law for the courts to decide, at this stage of the proceedings, the Court does not have a set of undisputed facts to which the law may be applied.  As such, only if both versions of the facts submitted by the parties dictate that the Defendants' conduct in question was reasonable or not in violation of a clearly established right, can this Court find that Defendants are entitled to qualified immunity.

As discussed above, Plaintiff's affidavits support a claim that Defendants' use of force was unreasonable.  Taking the alleged facts in the light most favorable to the non-movant, Plaintiff has shown that the crowd outside of Marshall Regional Medical Center was peacefully gathering when law enforcement officers began to harass them.  Furthermore, witnesses saw an officer push or wrest Plaintiff to the ground without an observable reason.  *See*, *e.g.*, Jackson Aff. ¶¶ 6-9.  Assuming these facts to be true, it is possible to conclude that Plaintiff's clearly established right to be free from excessive governmental force has been violated because no force would have been necessary to control a crowd of peaceful individuals.  In addition, such use of force would be clearly excessive and unreasonable to all competent law enforcement officers.  No reasonable officer would have "wrested" a person to the ground during a peaceful gathering.  Defendants, of course, dispute this set of facts, and offer evidence showing that all of the officers' conduct was completely reasonable.  *See* Mot. at 23; Hasler Aff. at 2-3.

Without an undisputed set of facts, this Court will withhold judgment as to whether two of the Defendants are entitled to qualified immunity for the excessive force claim.  As discussed above, there exists a genuine issue of material fact as to the nature of Defendants Matthew Hasler and

19

Brandon Fletcher's conduct on March 26, 2006.  Without a factual determination by the appropriate trier of fact, this Court cannot resolve the legal question as to whether these two Defendants' actions are amenable to a qualified immunity defense on this claim.  However, Plaintiff has not opposed the fact that Defendants Brad Thomas and Tom McCool were not involved with Plaintiff's arrest. Therefore Defendants' Motion for Summary Judgment based on a qualified immunity defense as applied to the excessive force claim, is granted as to Defendants Brad Thomas and Tom McCool, but denied as to Defendants Matthew Hasler and Brandon Fletcher.

C.     Claims Against Sheriff Tom McCool in his Official Capacity

It is well established that a suit against a state official in his official capacity is equivalent to an action against the governmental entity employing the individual.  Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation in order for there to be Section 1983 liability. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Under the Supreme Court's jurisprudence for such claims, "we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).  Similarly, an act performed pursuant to a custom that has not been formally approved by a supervisor can nonetheless create Section 1983 liability if the relevant practice is so widespread as to have the force of law.  *Id.* at 404.

1.     Failure to Supervise

Plaintiff claims that a governmental entity incurs liability when government officials have

20

notice of employee misconduct and fail to prevent recurrence of such misconduct.  In other words, Defendant McCool need not have instituted a policy or custom of encouraging use of excessive force; simply acting with "mere acquiescence" is sufficient to create official liability.  Resp. at 7. Also, Plaintiff argues that if a supervising official had a duty to prevent the officers from acting with excessive force, and did not, they are proper defendants in a Section 1983 action.  Mot. at 7 (citing *Rizzo v. Goode*, 423 U.S. 362, 385 (1976) (Blackmun, J., dissenting)).

Notwithstanding a factual distinction in *Rizzo*, which involved a police department with a pattern of frequent civil rights violations,[5] the majority in *Rizzo* rejected the dissent's support for liability based on a theory of "mere acquiescence" and a duty to prevent future abuses.  *Id*. at 376.

> "Respondents posit a constitutional 'duty' on the part of petitioners . . . to 'eliminate' future police misconduct; a 'default' of that affirmative duty being shown by the statistical pattern. . . . Such reasoning, however, blurs accepted usages and meanings in the English language in a way which would be quite inconsistent with the words Congress chose in § 1983.  We have never subscribed to these amorphous propositions, and we decline to do so now."

*Id*. at 376.

For these reasons, Plaintiff's claim that Sheriff McCool failed to supervise the remaining defendants cannot withstand summary judgment.  Simply showing that McCool did not reprimand his deputies for their alleged misconduct on March 26, 2006 is not sufficient to establish a policy or custom of using excessive force in the Harrison County Sheriff Department.  The Supreme Court has rejected Plaintiff's theory of "mere acquiescence" and any duty to eliminate future officer misconduct.  As such, Defendant Tom McCool's Motion for Summary Judgment on Plaintiff's

---

[5] Plaintiff has not submitted any competent evidence that would indicate the Harrison County Sheriff's Department has a history of civil rights violations.  Plaintiff has filed an affidavit stating that Plaintiff's attorney has previously sued the Harrison County Sheriff's Department, but has not provided any evidence of the lawsuit's success, or any findings of the court in that case.  Bernoudy Aff. ¶ 8.  To the contrary, Defendants have submitted a final order of dismissal in the case referred to by Plaintiff, indicating Plaintiff did not prevail.  Reply Ex. 1.

failure to supervise claim is granted.

2.      Failure to Train

Defendants have presented competent evidence showing that Sheriff McCool's deputies have received all appropriate and necessary forms of training established by the Texas Commission on Law Enforcement Standards and Education.  Mot. Exs. 7-9.  Such evidence has been held to be sufficient to defeat a claim for failure to train.  *See Gonzales v. Westbrook*, 118 F. Supp. 2d 728, 737 (W.D. Tex. 2000) (citing *Conner v. Travis County*, 209 F.3d 794 798 (5th Cir. 2000)) ("The Fifth Circuit, however, has held that if a law enforcement department meets the state standards for the training of its law enforcement officers, the plaintiffs cannot sustain a failure to train cause of action under 42 U.S.C. § 1983.").  Plaintiff has presented no evidence, and indeed, no argument, as to why this claim should proceed to trial.  Defendant Tom McCool has thus shown that no genuine issue of material fact exists for this claim and his Motion for Summary Judgment on Plaintiff's failure to train claim is granted.

3.      Failure to Properly Hire

In order to state a claim for failure to properly hire, a "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."  *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 411 (1997).  Furthermore, only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."  *Id.*

22

Defendants have presented evidence relating to the training history of the deputies named in this lawsuit. Mot. Exs. 7-9. Nothing in these documents would lead a reasonable policymaker to conclude that hiring these deputies will result in the deprivation of a third party's federally protected right. In addition, Plaintiff has submitted no evidence regarding McCool's hiring policy or methodology, and has not shown that Defendant was "deliberately indifferent" in his hiring decisions. The only fact Plaintiff has alleged is the absence of any reprimand for the alleged misconduct by the deputies. This fact has been addressed in the Court's discussion of the failure to supervise claim above. Without a genuine issue of material fact, Defendant Tom McCool's Motion for Summary Judgment on Plaintiff's failure to properly hire claim is granted.

D.      State Law Claims

Defendants have moved for summary judgment on each of Plaintiff's state law tort claims of false arrest, assault, battery, and intentional infliction of emotional distress. Although Plaintiff has filed a Response to Defendants' Motion, Plaintiff does not respond to the Defendants' arguments regarding these state law claims. No argument or caselaw is cited to support the validity of these claims. However, Plaintiff has submitted various affidavits that can potentially provide factual support for these claims. The Court will thus consider Plaintiff's submitted evidence, and determine whether there exists a disputed factual issue on a material element of these state law claims.

1.      False Arrest

In order to establish civil liability for false arrest or false imprisonment, a plaintiff must show a wrongful interference with his freedom. *Montgomery Ward & Co. v. Garza,* 660 S.W.2d 619, 621 (Tex. App. -Corpus Christi 1983, no writ). The elements of false arrest or false imprisonment are a willful detention of the person, against the consent of the person, without authority of law.

23

*Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995).  A detention may be accomplished by violence, by threats, or by any other means that restrains a person from moving from one place to another.  *Id*. at 644-45.

Defendants first argue that probable cause existed to arrest Plaintiff.  The Affidavit of Deputy Hasler and Deputy Fletcher supports an arrest for disorderly conduct based upon indecent or profane language in a public place.  Hasler Aff. at 2; Fletcher Aff. at 1-2.  However, the affidavits submitted by Plaintiff tend to suggest the opposite, as multiple witnesses stated under oath, "I did not see Kevin Whaley provoke the officers or resist them in any way."  *See*, *e.g.*, Jackson Aff. ¶ 9.  As such, there exists a disputed factual issue as to whether Deputies Hasler and Fletcher possessed probable cause to arrest Plaintiff.

Defendants also argue that an arrest did not occur.  Defendants contend that what occurred arguably amounts to a claim for unlawful detention, but not false arrest.  Mot. at 24-25.  However, Defendants do not cite to any legal authority for what amounts to an arrest.  *See* Mot. at 23-25.  Even were we to assume Defendants' version of the facts as true, Deputy Hasler detained and placed Plaintiff in handcuffs, thereby restricting Plaintiff's freedom of movement.  Under the legal standard for a state tort claim of false arrest, all that is needed is a "willful detention of the person . . . that restrains a person from moving from one place to another.  Even if this Court were to take Defendants' alleged facts as true, an arrest took place within the contours of a false arrest claim under Texas law.

Furthermore, it is undisputed that Plaintiff did not consent to an arrest of his body.  Without showing that Plaintiff will not be able to establish any of the elements of a false arrest claim, Defendants' Motion for Summary Judgment on Plaintiff's false arrest claim is denied as to

Defendants Matthew Hasler and Brandon Fletcher.  However, as discussed above, Defendants McCool and Thomas were not involved with the arrest of Plaintiff, and Defendants' Motion for Summary Judgment on this claim is granted as to Defendants Tom McCool and Brad Thomas.

      2.     Assault and Battery

The elements of assault are the same in both civil and criminal cases.  *Morgan v. City of Alvin,* 175 S.W.3d 408, 418 (Tex. App. -Houston [1st Dist.] 2004, no pet.) (citing *Forbes v. Lanzl,* 9 S.W.3d 895, 899 (Tex. App. -Austin 2000, pet. denied)).  A person commits an assault by (1) intentionally, knowingly, or recklessly causing bodily injury to another; (2) intentionally or knowingly threatening another with imminent bodily injury; or (3) intentionally or knowingly causing physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.  *Id.* (citing Tex. Pen. Code Ann. § 22.01 (Vernon 2004); *Forbes,* 9 S.W.3d at 900; *Wal-Mart Stores, Inc. v. Odem,* 929 S.W.2d 513, 522 (Tex. App. -San Antonio 1996, pet. denied)).  "Bodily injury" means "physical pain, illness, or any impairment of physical condition;" it is a broad term encompassing even relatively minor physical contacts so long as they constitute more than mere offensive touching.  *Forbes,* 9 S.W.3d at 900 (quoting Tex. Pen. Code Ann. § 1.07(a)(8)).

Battery has been defined as "the least touching of another person willfully and in anger, by the use of any part of the body of the party committing the offense." *Price v. Short*, 931 S.W.2d 677, 687 (Tex. App. -Dallas 1996, no writ).  To elaborate on the definition of willfulness, battery requires only an offensive touching, not an intent to injure.  *Id.*

From the factual circumstances presented by Plaintiff, an officer pushing a person to the ground without an apparent reason creates a fact issue sufficient to proceed to trial on both claims

of assault and battery.  The alleged facts demonstrate that Defendants acted knowingly and willfully, that such contact with Plaintiff was likely highly offensive, and that such contact did cause bodily injury and pain. Jackson Aff. ¶¶ 7-9.  For these reasons, Defendants' Motion for Summary Judgment on the claims of assault and battery are both denied as to Defendants Matthew Hasler and Brandon Fletcher.  However, as discussed above, Defendants McCool and Thomas were not involved with the arrest of Plaintiff, and Defendants' Motion for Summary Judgment on this claim is granted as to Defendants Tom McCool and Brad Thomas.

3.      Intentional Infliction of Emotional Distress

To recover for intentional infliction of emotional distress ("IIED"), a plaintiff must show the following: (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe.  Concerning outrageousness, liability for such conduct should be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).

Defendants assert that they did not act intentionally or recklessly, nor was their conduct extreme and outrageous.  Mot. at 26.  Given their version of the facts, this may very well be true. However, given the facts as presented by the witnesses for Plaintiff, it can be reasonably inferred that the deputies in question intentionally harassed peaceful members of the crowd, and eventually wrested Plaintiff to the ground without an apparent justification. Jackson Aff. ¶¶ 5-9.  Such conduct is arguably extreme and outrageous, and is a fact issue for the jury to determine.

Defendants' main point of contention, however, is that Plaintiff did not suffer emotional distress, and even if he did, it was certainly not severe.  Mot. at 26.  Defendants cite several cases for the proposition that "[d]amage to a plaintiff's reputation and feelings of anger, depression, and humiliation are not enough . . . Severe distress is that which no reasonable person could be expected to endure and must be more than mere worry, anxiety, vexation, embarrassment, or anger."  Mot. at 26 (citing *Pisharodi v. Valley Baptist Med. Ctr.*, 393 F. Supp. 2d 561, 577 (S.D. Tex. 2005) (citing *Gonzalez v. Willis*, 995 S.W.2d 729, 736 (Tex. App. -San Antonio 1999, reh'g overruled))).  Defendants point to the deposition of Plaintiff, in which he denies suffering mental anguish or mental strain as a result of the incident.  Whaley Dep. at 88-89.  For example, Plaintiff has not experienced any nightmares or flashbacks.  *Id*. at 89.  Plaintiff does mention that as a result of this incident, he worries about his son growing up to be a person who does not respect law enforcement officers.  *Id*.  Though this is arguably a form of mental stress, courts have deemed mere worry, anxiety, and vexation as being insufficient to constitute severe emotional distress.  *See Regan v. Lee*, 879 S.W.2d 133, 136-37 (Tex. App. -Hous. [14 Dist.] 1994, no writ) (finding evidence that plaintiff was "very angry, humiliated, and suffered from depression as a result of the incident because she could not explain to her children why appellant spoke to her in the manner that he did" to be legally insufficient evidence for severe emotional distress).

Furthermore, Plaintiff has not provided any argument or legal authority to contradict Defendants' position.  Nor has Plaintiff submitted any evidence to the contrary.  The only evidence submitted by Plaintiff concerning emotional distress is the statement that Plaintiff was wrested to the ground and "subsequently grab[ed] his ankle as if in pain."  Robinson Aff. ¶ 8.  Evidence of direct physical pain, however, is not evidence of the type of emotional distress that an IIED claim

is concerned with.  *See Washington v. Knight*, 887 S.W.2d 211, 216 (Tex. App. -Texarkana 1994, writ denied) ("Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, disappointment, anger, worry, and despair.").

Plaintiff has not provided sufficient evidence to rebut Defendants' showing that Plaintiff did not suffer severe emotional distress.  As this is an essential element to an IIED claim, Defendants' Motion for Summary Judgment on Plaintiff's IIED claim is granted as to all Defendants.

E.      Official Immunity Defense

Defendants assert they are also entitled to official immunity for Plaintiff's state law claims. It is well established that official immunity is an affirmative defense that places the burden on the defendant to establish all elements of the defense.  *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).  "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority."  *Id*.  Discretionary duties are those that "involves personal deliberation, decision and judgment," while ministerial acts are those that require obedience to orders or those in which the actor has no choice.  *Id*.  In general, police officers are exercising their discretion while performing their duties.  *Id*.

The standard for good faith has been articulated in the following manner: "an officer acts in bad faith only if he could not have reasonably reached the decision in question."  *University of Houston v. Clark*, 38 S.W.3d 578, 581 (Tex. 2000).  In other words, an officer has acted in good faith if any reasonable officer could have acted in the same fashion.  *See id.*

The only point of contention between the parties is whether there is a genuine issue of material fact over the element of good faith.  *See* Mot. at 27; Resp. at 8.  Defendants assert that they

acted with good faith in detaining Plaintiff for disorderly conduct. Again, Plaintiff has submitted evidence showing that Defendants pushed and wrested Plaintiff to the ground without any observable provocation. Jackson Aff. ¶¶ 7-9. Given this contradictory set of facts, a reasonable jury could find that no reasonable officer would have acted in a similar fashion. Defendants' Motion for Summary Judgment on their official immunity defense is thus denied as to Defendants Matthew Hasler and Brandon Fletcher. However, as discussed above, Defendants McCool and Thomas were not involved with the arrest of Plaintiff, and Defendants' Motion for Summary Judgment on official immunity is granted as to Defendants Tom McCool and Brad Thomas.

F.     Punitive Damages

Defendants seek to dismiss Plaintiff's claim for punitive damages. Mot. at 28. In a civil rights action under 42 U.S.C. § 1983, punitive damages may be awarded only if the official conduct is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights. *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994) (citing *Smith v. Wade*, 461 U.S. 30 (1983)). As discussed above, Plaintiff has shown that two deputies may have unreasonably pushed and wrested Plaintiff to the ground. Though this is disputed, a reasonable jury could find that such an act was motivated by evil intent.

Similarly, under Texas state law, "punitive damages can be awarded when a tort is committed willfully or maliciously." *Durand v. Moore*, 879 S.W.2d 196, 202 (Tex. App. -Hous. [14 Dist.] 1994, reh'g denied), *amended on other grounds by Durand v. Moore*, 1994 WL 276678 (Tex. App. -Hous. [14 Dist.] Jun 23, 1994). With the same set of disputed facts above, a reasonable jury could find that Defendants acted willfully or maliciously.

Defendants' Motion for Summary Judgment on Plaintiff's punitive damages claim is thus

29

denied as to Defendants Matthew Hasler and Brandon Fletcher.  However, as discussed above, Defendants McCool and Thomas were not involved with the arrest of Plaintiff, and Defendants' Motion on the punitive damages claim is granted as to Defendants Tom McCool and Brad Thomas.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 83) is hereby **GRANTED IN PART** and **DENIED IN PART**.

Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's First Amendment claim to peaceably assemble for all Defendants, Plaintiff's excessive force claim for Defendants Tom McCool and Brad Thomas, Plaintiff's claims against Tom McCool in his official capacity to properly supervise, train, or hire his employees, Defendants' qualified immunity defense for Defendants Tom McCool and Brad Thomas, Plaintiff's state law claims of false arrest for Defendants Tom McCool and Brad Thomas, assault and battery for Defendants Tom McCool and Brad Thomas, and intentional infliction of emotional distress for all Defendants, Defendants' official immunity defense for Defendants Tom McCool and Brad Thomas, and Plaintiff's claim for punitive damages for Defendants Tom McCool and Brad Thomas.

Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's excessive force claim for Defendants Matthew Hasler and Brandon Fletcher, Defendants' qualified immunity defense for Defendants Matthew Hasler and Brandon Fletcher, Plaintiff's state law claims of false arrest for Defendants Matthew Hasler and Brandon Fletcher, assault and battery for Defendants Matthew Hasler and Brandon Fletcher, Defendants' official immunity defense for Defendants Matthew Hasler and Brandon Fletcher, and Plaintiff's claim for punitive damages for Defendants Matthew Hasler and Brandon Fletcher.

To summarize the Court's judgment for the convenience of the parties, the causes of action belonging to Plaintiff that will be proceeding to trial are as follows: (1) excessive force under § 1983, (2) false arrest under state tort law, (3) assault under state tort law, (4) battery under state tort law. All of these claims are to be asserted only against Defendants Matthew Hasler and Brandon Fletcher.

**So ORDERED and SIGNED this 11th day of October, 2007.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE